**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

ANTHONY NGUYEN,

Plaintiff,

v.

THOMAS TAUER et al.,

Defendants.

Case No. 2:26-cv-02551-SB-DFM

REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

This Report and Recommendation is submitted to the Honorable Stanley Blumenfeld, Jr., United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I. INTRODUCTION

Plaintiff Anthony Nguyen challenges his exclusion from Edwards Air Force Base and the events that preceded it. On April 9, 2026, he filed the operative First Amended Complaint. See Dkt. 35 ("FAC"). The FAC alleges ten claims against Colonel Thomas M. Tauer, Connie Farmer, and Oliver Payne; the Secretary of the Air Force; the United States Department of the Air Force; Edwards Air Force Base; and twenty Doe defendants.[1]

[1] Several of Defendants' arguments assume Payne was a federal employee acting within the scope of his employment. But the FAC alleges that

On August 5, 2026, Defendants moved to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Dkt. 91 ("Motion"). Plaintiff opposed, see Dkt. 93 ("Opposition"), and filed a supporting declaration, see Dkt. 94 ("Nguyen Decl."), evidentiary objections, see Dkt. 95 ("Evid. Obj."), and a request for judicial notice, see Dkt. 96 ("RJN"). Defendants replied. See Dkt. 107 ("Reply"). The Court grants Plaintiff's request to file a sur-reply, see Dkt. 108 ("Sur-Reply") and has considered it.

On August 31, 2026, Plaintiff requested leave to amend, see Dkt. 111, and separately filed a proposed Second Amended Complaint that seeks principally to add claims under the Federal Tort Claims Act (FTCA) against the United States, see Dkt. 112. The Court has considered these filings as well.

The Court read and considered the moving, opposing, and reply papers, and found these matters suitable for decision without oral argument. See Dkt. 122. For the reasons set forth below, the Court recommends that the Motion be **GRANTED** in part and **DENIED** in part, and that Plaintiff's request for leave to amend be **DENIED** without prejudice.

## II. BACKGROUND

Plaintiff is a disabled veteran of the United States Air Force. See FAC ¶¶ 4, 7. In July 2025, he enrolled in flight instruction offered through the Edwards Air Force Base Aero Club, which he describes as a hybrid program combining installation authority; morale, welfare, and recreation oversight; and private instruction. See id. ¶ 9 & at 4-5. He alleges that he disclosed hearing and other disabilities, requested accommodation including reassignment away from his

---

Payne "is a UK/foreign national, not a federal employee, officer, or agent of the United States," who worked "as a private civilian flight instructor" and "acted outside the scope of federal employment." FAC ¶ 5. The Court accepts those allegations as true for purposes of this motion.

assigned instructor, Oliver Payne, and that those requests were denied. See id. ¶ 10; see also Nguyen Decl. ¶¶ 19-22.

On December 1, 2025, Colonel Tauer, Commander of the 412th Test Wing, issued a memorandum titled "Order NOT to Enter Edwards Air Force Base, California." Declaration of Alexander L. Farrell in Support of Motion, Ex. A ("Barment Order"). The Barment Order recites that during Plaintiff's authorized access to the base between August 5 and 9, 2025, Plaintiff repeatedly misrepresented himself as a USAF officer and as chief executive officer of "Air Force Law"; recorded a preflight briefing; and captured unauthorized images of restricted areas and disregarded instructions to delete them. Id. The Barment Order further recites that "[a] formal investigation confirmed" that Plaintiff is not a USAF officer and that his presence on the installation is considered "detrimental to the maintenance of good order and discipline." Id. The Barment Order directs Plaintiff not to reenter the base, warns that non-compliance with the order would be a violation of 18 U.S.C. § 1382, and provides that he may seek modification or termination of the order by submitting a written justification through the Commander of the 412th Security Forces Squadron. See id.

Plaintiff disputes the facts set forth in the Barment Order. See FAC ¶¶ 15-20; Evid. Obj. Nos. 1-2. He alleges that there was no investigation, that it rested solely on Payne's unverified accusations, and that it issued in retaliation for his complaints about disability accommodations, flight safety, and Payne's certification. See FAC ¶¶ 5, 17-20, 43-46.

On December 31, 2025, Plaintiff wrote to Colonel Tauer asking him to withdraw the order, copying the Inspector General, equal opportunity offices, and the Pentagon. See id. ¶¶ 35-37. The Edwards Air Force Base Judge Advocate office received that letter on January 9, 2026 and transferred it to Headquarters USAF/JACC. See Opposition, Ex. 1 at 7. On April 1, 2026,

Plaintiff submitted a "Supplement to Standard Form 95 (FTCA Claim)." Id. at 14-17.

The FAC's claims are as follows. Claim I is a Bivens claim against Tauer, Farmer, and Payne individually. Claim I, Subclaim A challenges the order under the Administrative Procedure Act, 5 U.S.C. § 706, against the agency and the Secretary in his official capacity. Claim I, Subclaim B seeks a declaratory judgment under 28 U.S.C. § 2201. Claim II is a second Bivens claim against the same individuals. Claim III alleges disability discrimination against the federal defendants under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Claim IV seeks injunctive relief under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and is pleaded "against private instructor / private Aero Club operator only." Claim V alleges retaliation under both the Rehabilitation Act and the First Amendment. Claims VI through X allege state-law theories against Payne and Farmer as private actors: defamation, breach of contract against Payne personally, negligence per se based on Payne's asserted lack of an FAA flight instructor certificate, fraud against Payne alone, and negligent misrepresentation.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss if it lacks subject matter jurisdiction. Jurisdiction is presumed absent, and the party asserting it bears the burden. See Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) (citation omitted).

A motion under Rule 12(b)(6) challenges the legal sufficiency of the claims. To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads facts allowing the court to draw a reasonable inference of liability. See

id. Labels, conclusions, and formulaic recitations of elements do not suffice. See id.

Courts must "construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

## IV. DISCUSSION

### A. Judicial Notice and Evidentiary Objections

Plaintiff asks the Court to notice its own docket and orders, Air Force claims correspondence, his administrative submissions, FAA and postal records, and published regulations. See RJN at 4-6. The request is **GRANTED** as to the Court's docket and orders and as to published federal and Air Force regulations. It is otherwise **DENIED** as unnecessary. It is **DENIED** as to the truth of any disputed fact in a noticed document. "[A] court cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Plaintiff objects to the Farrell declaration and the Barment Order. See Evid. Obj. Nos. 1-12. The objections are **SUSTAINED** in part. The FAC relies on the Barment Order, quotes it, and identifies it as an exhibit; the document is therefore properly incorporated by reference. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). But incorporation does not permit the Court to treat the Barment Order as establishing any facts over Plaintiff's contrary allegations. Accordingly, the Court does not accept as true

that Plaintiff misrepresented himself, photographed restricted areas, disregarded instructions, or that a formal investigation preceded the Barment Order. The objections are **OVERRULED** in all other respects.

**B. The *Bivens* Claims**

Claims I and II seek damages from Colonel Tauer, Farmer, and Payne individually under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), for alleged violations of Fifth Amendment due process and equal protection. See FAC at 19, 24. Claim V pleads retaliation under both the First Amendment and the Rehabilitation Act. See id. at 24. The First Amendment retaliation theory will be addressed here.

A Bivens claim is an implied cause of action arising directly under the Constitution for damages against federal officers alleged to have violated a plaintiff's constitutional rights. See Bivens, 403 U.S. at 389. However, the Supreme Court has only recognized an implied Bivens cause of action in limited contexts. See id. (Fourth Amendment for unreasonable search and seizure); Davis v. Passman, 442 U.S. 228, 248-49 (1979) (Fifth Amendment Due Process clause for gender discrimination in Congressional employment); Carlson v. Green, 446 U.S. 14, 17-19 (1980) (Eighth Amendment Cruel and Unusual Punishment clause for deliberate indifference to serious medical needs). The Supreme Court has made clear that expanding the Bivens remedy beyond those limited contexts is a "'disfavored' judicial activity." Ziglar v. Abbasi, 582 U.S. 120, 135 (2017).

In Ziglar, the Court outlined a two-step test to determine whether a Bivens remedy exists in any given case. First, a court must decide "if the case is different in a meaningful way from previous Bivens cases" decided by the Supreme Court; if so, the claim arises in a new context and cannot proceed unless the Bivens remedy is extended to that context. See id. at 135-37, 139. "[E]ven a modest extension is still an extension." Id. at 147.

Second, if a claim arises in a new context, then a court must consider whether there are "special factors counselling [judicial] hesitation [in implying a Bivens remedy] in the absence of affirmative action by Congress." Id. at 136 (citation and internal quotation marks omitted). If so, a Bivens remedy is not available. See id. In Egbert v. Boule, the Court emphasized that the key inquiry is "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" 596 U.S. 482, 496 (2022) (quoting Ziglar, 582 U.S. at 136).

Plaintiff's Fifth Amendment theories arise in a new context. As noted, the Supreme Court has allowed a Fifth Amendment damages remedy in one setting only: gender discrimination in Congressional employment. A context is new when the case "is different in a meaningful way" from the Court's prior decisions. See Ziglar, 582 U.S. at 139. This case differs from gender discrimination in Congressional employment in several meaningful ways, from the rank of the officers to the authority exercised, not to mention the risk of judicial intrusion into military administration.

In a new context, the question is "whether there is any reason to think that Congress might be better equipped to create a damages remedy," and one rational reason is enough. Egbert, 596 U.S. at 492. Base access falls within the Executive's authority over military affairs, and a damages suit against a Commander over an access decision would draw courts into that sphere.

The First Amendment theory is likewise a non-starter. The U.S. Supreme Court stated in Egbert that "there is no Bivens action for First Amendment retaliation." Id. at 498-99.

The Bivens claims designated as Claims I and II should be **DISMISSED** without leave to amend. Neither pleads any theory besides Bivens, which is a damages action, so nothing of either claim remains. The First Amendment

component of Claim V should be likewise **DISMISSED** without leave to amend.

### C. The Federal Tort Claims Act Argument

Defendants argue the FAC must be dismissed because Plaintiff did not exhaust his administrative remedies before filing suit. See Motion at 19-21.

The FAC makes several references to the FTCA. Paragraph 5 says Plaintiff "pleads claims in the alternative under the Federal Tort Claims Act." FAC ¶ 5. The unnumbered paragraph after paragraph 6 adds "following administrative exhaustion." Id. at 4. Claim VIII says Plaintiff "reserves claims under the Federal Tort Claims Act following exhaustion." Id. at 31. Paragraph 55 states that he has "until after 07/10/2026 to file Federal Tort claim case." Id. at 15.

Read as a whole, the FAC does not presently assert an FTCA claim. It does not name the United States as a defendant, pleads no claim under the FTCA, and does not invoke 28 U.S.C. § 1346(b). See id. ¶ 2. The references to the FTCA are in the alternative and point to exhaustion that has not yet happened. Defendants' FTCA argument therefore gives no basis for dismissing any claim the FAC actually pleads against the defendants it actually names.[2]

---

[2] To the extent the FAC alleges an FTCA claim, it must be dismissed. "An action shall not be instituted" against the United States for money damages until the claim has been presented to the agency and denied or six months have passed. 28 U.S.C. § 2675(a). A suit filed early must be dismissed even if exhaustion is completed while it is pending. See McNeil v. United States, 508 U.S. 106, 111-13 (1993). Here, the FAC was filed on April 9, 2026. As of that date, no claim had been denied and six months had not run.

### D. Title III of the Americans with Disabilities Act

Claim IV seeks injunctive relief under Title III of the Americans with Disabilities Act (ADA). See FAC at 24. The caption of the FAC states that this claim is pleaded "against private instructor / private Aero Club operator only," id. at 1, and later states that "[t]his claim is asserted only against private or non-federal actors," id. ¶ 84.

Defendants make two arguments about Plaintiff's ADA claim. First, Defendants ask the Court to dismiss Claim IV as to the Secretary, the Department, and Edwards Air Force Base. See Motion at 22. But as Claim IV expressly disclaims that it is asserted against any of these defendants, Defendants' request is unnecessary.

Defendants' other argument about Claim IV is that the allegations "clearly do[] not involve a 'public accommodation.'" Id. But a public accommodation may include any "other service establishment," 42 U.S.C. § 12181(7)(F), and any "other place of education," id. § 12181(7)(J). Federal ownership of the site does not by itself defeat coverage. Title III reaches those who "lease[]" or "operate[]" a place of public accommodation, not just owners, and the implementing regulation defines "place of public accommodation" as "a facility, operated by a private entity, whose operations affect commerce" and falls within at least one specified category. 28 C.F.R. § 36.104.

For purposes of Title III, liability turns on whether a defendant exercises sufficient control over a facility to qualify as its "operator," not merely on a defendant's presence at or use of the premises. See Disabled Rts. Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 878 & n.14 (9th Cir. 2004) (holding that whether an entity "operate[s]" a facility depends on whether it exercises "sufficient control" over the facility). The allegations of the FAC are sparse and inconsistent: it alleges that private instructors provide the flight

training and that Payne was one, and it also calls Farmer the Aero Club "Manager" while also calling her "a federal employee of US Air Force." FAC at 1 & ¶ 5. The FAC contains no allegations about who operates the Aero Club; whether its operations affect commerce; what modification Plaintiff sought and whether it was reasonable; whether granting it would be a fundamental alteration or a direct threat; whether Plaintiff has standing to seek prospective relief given his exclusion; and whether the private club exemption at 42 U.S.C. § 12187 applies to what the FAC calls a "private non-profit club," FAC at 4. Without such allegations, Plaintiff's Title III claim should be **DISMISSED**.

**E. The Rehabilitation Act Claim**

Claims III and V allege discrimination and retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. See FAC ¶¶ 82, 85. Plaintiff seeks relief on these claims from the Secretary and the Department. See id. ¶ 6.

Defendants argue that the FAC does not show that Edwards Air Force Base is a "program or activity receiving Federal financial assistance." Motion at 22. However, Section 504 also reaches "any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The Department of Defense has implemented that clause by regulation. See 32 C.F.R. pt. 56; id. §§ 56.1, 56.7(c). And the Ninth Circuit has held that Section 504 supports a private action against the federal government. See Doe v. Att'y Gen. of the United States, 941 F.2d 780, 788-95 (9th Cir. 1991).

However, sovereign immunity limits Plaintiff's remedy, as Section 504(a) does not waive the government's immunity from money damages for violations by Executive agencies. See Lane v. Peña, 518 U.S. 187, 192-200 (1996). Claims III and V should be **DISMISSED** without leave to amend insofar as they seek damages against the United States, its agencies, or its officers in their official capacities.

Retaliation is a distinct theory from discrimination. Section 504 incorporates the remedies of Title VI, 29 U.S.C. § 794a(a)(2), and the Department's regulation directs that "[r]ecipients and DoD Components shall take reasonable steps to ensure that no person intimidates, threatens, coerces, or discriminates against any individual for the purpose of retaliating against, interfering with, or discouraging the filing of a complaint." 32 C.F.R. § 56.9(e). A retaliation claim does not require the showing that discrimination occurred "solely by reason of" disability. See Barker v. Riverside Cnty. Off. of Educ., 584 F.3d 821, 825 (9th Cir. 2009) (holding that the statute's protections extend to persons who are not even disabled).

Defendants do not address retaliation, so the Court does not decide whether Claim V is sufficient. The Court notes that the FAC describes protected activity of different kinds. The accommodation and reassignment requests concern disability but were directed to Payne and Farmer. See FAC ¶¶ 10-12. The Inspector General complaint concerns "the negligent conduct of Defendant Payne during flight operations." Id. ¶ 12. The complaints to Command, the Inspector General, and the Pentagon are not described by subject or date. See id. ¶ 25. The correspondence that concerns disability and reached Colonel Tauer is dated December 31, 2025, after the December 1 Barment Order. See Dkt. 7-1 at 8-11. The FAC does not allege that Colonel Tauer knew of the earlier accommodation requests before he issued the order.

### F. The APA and Declaratory Relief

Subclaim A of Claim I challenges the Barment Order under 5 U.S.C. § 706 as arbitrary and capricious, contrary to constitutional right, and issued without required procedure. See FAC at 19-23. It seeks declaratory and injunctive relief. See id. To state a claim under the APA, Plaintiff must identify a final agency action. See Hells Canyon Pres. Council v. U.S. Forest Serv., 593 F.3d 923, 930 (9th Cir. 2010).

Air Force regulations authorize each commander "to grant or deny access to their installations, and to exclude or remove persons whose presence is unauthorized," 32 C.F.R. § 809a.2(b), and to "deny access to the installation through the use of a barment order," id. § 809a.5. The same regulation limits that authority: a commander "must not act in an arbitrary or capricious manner," and his or her action "must be reasonable in relation to their responsibility to protect and to preserve order on the installation." Id. § 809a.2(b). Based on these regulations, the decision is not committed to agency discretion under 5 U.S.C. § 701(a)(2). Defendants do not argue otherwise.

The Barment Order appears to be a final agency action. It is permanent unless revoked in writing, and it exposes Plaintiff to criminal penalties under 18 U.S.C. § 1382. See Bennett v. Spear, 520 U.S. 154, 177-78 (1997). Its fourteen-day modification procedure does not change that. Section 704 makes otherwise-final action final "whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration," and courts "are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final.'" Darby v. Cisneros, 509 U.S. 137, 146-47, 154 (1993). The procedure asks the officer who issued the order to reconsider it; no statute requires it, and § 809a.5 does not suspend a barment pending review. Plaintiff alleges he used it in any event. See FAC ¶¶ 35-37. Nor is there another adequate remedy in a court: the FTCA provides damages, not an order setting aside agency action.

On the merits, review is narrow. Civilians have no constitutional right to enter a military installation, see Greer v. Spock, 424 U.S. 828, 838 (1976), and a commander's decision "will be disturbed only upon a showing that the grounds for exclusion were patently arbitrary or discriminatory," Bridges v. Davis, 443 F.2d 970, 973 (9th Cir. 1971). But narrow review is still review: the

limited scope "does not mean that any military action is beyond the reach of the courts." Id.

The difficulty is the posture. The reason the order gives is the very thing Plaintiff disputes, and the Court may not credit the order's recitals to defeat his allegations. See Khoja, 899 F.3d at 1003, 1014. Without those recitals, the Motion offers no reason to call the FAC implausible. Plaintiff alleges—and for present purposes the Court must accept—that no investigation occurred, that no administrative record exists, that the decision rested on one accuser who had a motive to lie, and that it followed his complaints. See FAC at 19-23; id. ¶ 25.

The record needed to apply the standard also does not yet exist. Review proceeds on "the administrative record already in existence," Camp v. Pitts, 411 U.S. 138, 142 (1973), which means "the record the agency presents to the reviewing court," Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). The Court recommends that Defendants lodge a certified copy of the administrative record for the Barment Order.

The Motion should be **DENIED** as to Subclaim A of Claim I. Subclaim B of Claim I seeks declaratory relief under 28 U.S.C. § 2201 on the same basis. That Act creates no independent claim, but because Subclaim A may proceed, the Motion should be **DENIED** as to Subclaim B as well.

### G. The State-Law Claims

Claims VI through X plead state-law claims of defamation, breach of contract, negligence per se, fraud, and negligent misrepresentation. See FAC at 24-35. These claims name Payne and/or Farmer. See id.

Defendants argue the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over Claim VII, the breach of contract claim. See Motion at 22-23. The Tucker Act governs contracts with the United States. See Lee v. Blumenthal, 588 F.2d 1281, 1282-83 (9th Cir. 1979). But Claim VII expressly

alleges that Plaintiff "entered into an agreement" with Payne "in his personal capacity as a private civilian flight trainer." FAC ¶¶ 87, 89. Accordingly, the Tucker Act does not apply.

Defendants' remaining arguments rest on assumptions that have not been established: that Payne and Farmer are federal employees, that the NATO Status of Forces Agreement assimilates Payne, and that the claims are therefore channeled into the FTCA and barred in part by 28 U.S.C. § 2680(h). See Motion at 18-20. Each argument fails; Defendants' Motion based on these arguments should therefore be **DENIED**.

### H. Leave to Amend

Courts should "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), and should not dismiss a pro se complaint without leave unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citation and internal quotation marks omitted). Futility alone can justify denial. See Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

This futility standard is met for several of Plaintiff's claims. The Bivens theories fail because no cause of action exists in this context, and Section 504 does not waive immunity for damages. No further allegation could change either result. See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011). Those claims should be dismissed without leave to amend, and Plaintiff should not replead them.

The Title III claim is different. Its defects are pleading defects, and Plaintiff may be able to cure them. He should have leave to amend Claim IV.

Plaintiff's pending request for leave to file the proposed Second Amended Complaint should nonetheless be denied. Upon the timely filing of an amendment to a pending administrative claim, the agency has six months in which to dispose of the claim as amended, and the claimant's option under

28 U.S.C. § 2675(a) does not accrue until six months after the amendment is filed. See 28 C.F.R. § 14.2(c); Redlin v. United States, 921 F.3d 1133, 1136-39 (9th Cir. 2019). Even assuming the amendment was filed on April 1, 2026, six months had not elapsed when Plaintiff submitted the proposed pleading on August 31, 2026, and Plaintiff does not allege that the agency issued a final denial. The proposed pleading therefore does not establish exhaustion. It also incorporates and refers to the First Amended Complaint rather than standing as a complete pleading, contrary to Local Rule 15-2.

Once exhaustion is complete, however, a plaintiff may amend an existing action asserting non-FTCA claims to add the United States and an FTCA claim. See Valadez-Lopez v. Chertoff, 656 F.3d 851, 854-58 (9th Cir. 2011). Plaintiff should therefore be permitted, if he elects to amend, to add an FTCA claim against the United States to the extent his administrative claim is then fully exhausted. He should not be permitted to add any other claim or any other Defendant without leave of Court.

## V. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order:

1. Accepting this Report and Recommendation;

2. Granting in part the Motion (Dkt. 91) as follows:

a. Dismissing the Bivens claim designated as Claims I and II without leave to amend;

b. Dismissing the First Amendment portion of Claim V without leave to amend;

c. Dismissing Claims III and V without leave to amend insofar as they seek money damages against the United States, its agencies, or its officers in their official capacities, and otherwise denying the Motion as to Claims III and V; and

d. Dismissing Claim IV with leave to amend as to Defendants Payne and Farmer.

3. Denying in part the Motion as follows:

a. Denying as moot the request to dismiss Claim IV as to the Secretary, the Department, and Edwards Air Force;

b. Denying the Motion as to Subclaims A and B of Claim I; and

c. Denying the Motion as to Claims VI through X.

4. Holding that the First Amended Complaint does not presently assert a claim under the Federal Tort Claims Act, and, alternatively, dismissing without prejudice under 28 U.S.C. § 2675(a) any such claim the pleading may be read to assert;

5. Denying without prejudice Plaintiff's request for leave to file the proposed Second Amended Complaint (Dkts. 111-12); and

6. Providing that Plaintiff may, but need not, file a Second Amended Complaint within twenty-eight (28) days of the Order. If Plaintiff does not file a Second Amended Complaint within that period, this action will proceed on the First Amended Complaint as limited by the Order—that is, on Subclaims A and B of Claim I, on Claims III and V to the extent not dismissed, and on Claims VI through X.

Date: September 18, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge